———————————————————

ARCHER & GREINER,
A Professional Corporation,          1:16-cv-04023-NLH-AMD

     Plaintiff/Counter-          **OPINION**
     defendant,

   v.

ALAN P. ROSEFIELDE,

     Defendant/Counter-
     claimant/Third-Party
     Plaintiff,

BENJAMIN MORGAN and JOHN
CONNELL,

     Third-Party
     Defendants.

———————————————————

**APPEARANCES**:

ELLIS I. MEDOWAY
THOMAS A. MUCCIFORI
KERRI E. CHEWNING
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033
    On behalf of Plaintiff/Counter-defendant and Third-Party
    Defendants

ANDREW RUBIN
96 PARK STREET
MONTCLAIR, NJ 07042
    On behalf of Defendant/Counter-claimant/Third-Party
    Plaintiff

**HILLMAN**, District Judge

    This matter concerns claims by Plaintiff, Archer & Greiner,

PC, against Defendant, Alan P. Rosefielde, for unpaid legal

fees, and Rosefielde's counterclaims and third-party complaint against Archer & Greiner, PC and two of its lawyers, Benjamin Morgan and John Connell (collectively hereinafter "Archer"), for legal malpractice, breach of fiduciary duty, and breach of contract arising out of the representation of Rosefielde that resulted in the alleged unpaid legal fees. Archer has moved for judgment on the pleadings in its favor on Rosefielde's claims against it. For the reasons expressed below, Archer's motion will be granted in part and denied in part.

## BACKGROUND

This action arises out of Archer's representation of Rosefielde in a dispute between Bruce Kaye, who managed several timeshare business entities, and Rosefielde, an attorney whom Kaye initially retained as outside counsel and later became in-house general counsel of Kaye's business entities and Kaye's personal attorney, as well as Chief Operating Officer of several of the timeshare entities.

The background for this "inordinately complicated" and "massive" case[1] was summarized by the N.J. Supreme Court when the dispute finally came before it on Kaye's petition for certification:

---

[1] See Kaye v. Rosefielde, 75 A.3d 1168, 1172 (N.J. Super. Ct. App. Div. 2013) (Kaye II) (explaining that the case "has been besieged by an inordinate amount of complications" and has a "massive record").

For approximately two years, Rosefielde served as Chief
Operating Officer (COO) of some of Kaye's timeshare
businesses, and functioned, in effect, as those entities'
General Counsel.  In that capacity, Rosefielde committed
serious misconduct by acting on his own behalf instead of
acting for his employers' benefit and exposing his
employers to potential liability.  That misconduct, among
other issues, led to Rosefielde's dismissal and this
litigation.

Kaye, in his individual capacity and as trustee of two
trusts, Kaye's son Jason Kaye, and business entities that
Kaye owned sued Rosefielde and several entities.
Plaintiffs asserted claims based on Rosefielde's breach of
fiduciary duty, fraud, legal malpractice, unlicensed
practice of law, and breach of the duty of loyalty.
Following a lengthy bench trial, the trial court found that
Rosefielde engaged in egregious conduct constituting a
breach of his duty of loyalty, breach of his fiduciary
duty, legal malpractice, and civil fraud. The trial court
rescinded Rosefielde's interest in several entities,
awarded compensatory damages, punitive damages, and legal
fees, and dismissed Rosefielde's counterclaims.  It
declined, however, to order the equitable disgorgement of
Rosefielde's salary as a remedy for his breach of the duty
of loyalty, on the ground that his breach did not result in
damage or loss to the entities that employed him.  The
Appellate Division affirmed that determination, and this
Court granted certification on the issue of equitable
disgorgement.

Kaye v. Rosefielde, 121 A.3d 862, 864 (N.J. 2015) (Kaye III).

The N.J. Supreme Court's opinion granting certification

provided that "the petition for certification is granted limited

to the issue of whether the Appellate Division erred by

affirming the trial court's holding that economic damages are a

necessary prerequisite for disgorgement of the employee's

salary."  Kaye v. Rosefielde, 91 A.3d 22 (N.J. 2014).

After considering that question, the N.J. Supreme Court

3

reversed the appellate division and held that "the remedy of equitable disgorgement is available to a trial court even absent a finding that the employer sustained economic loss by virtue of the employee's disloyal conduct. In accordance with the broad discretion afforded to courts fashioning equitable remedies that are fair and practical, a trial court may order disgorgement of an employee's compensation as a remedy for a breach of loyalty in an appropriate case."

Kaye III, 121 A.3d at 864–65.

In his claims against Archer, Rosefielde argues that the N.J. Supreme Court's certification of the disgorgement issue was flawed from the outset because Rosefielde was not an "employee." Because the N.J. Supreme Court based its holding on the assumption that Rosefielde was an employee rather than an independent contractor, which Rosefielde contends that he was and that Kaye also viewed him that way, the determination that he must be disgorged of his salary is incorrect. Rosefielde blames Archer for this incorrect court order because it failed to correct, in either its brief, at oral argument, or in a motion for reconsideration, the N.J. Supreme Court's mistaken assumption that Rosefielde was Kaye's employee.

Rosefielde also claims that Archer committed legal malpractice, breached its fiduciary duty to Rosefielde, and breached their contract in other ways: (1) failing to follow his

detailed request that the brief submitted to the N.J. Supreme
Court explain that Rosefielde had entered into a settlement
agreement regarding his and Kaye's Florida litigation, and that
the appeal was the only outstanding dispute between him and
Kaye; (2) failed to argue in the brief or at oral argument the
doctrine of judicial estoppel – that Rosefielde could be
considered an employee for the purposes of engorgement, but
could not be considered an employee under New Jersey's
Contentious Employee Protection Act; (3) billed excessively for
its work, and billed for unnecessary work; and (4) by written
agreement, Archer accepted a payment by Rosefielde of $30,000 in
full satisfaction of all amounts due and owing Archer as of
September 26, 2013, but Archer is seeking payment for five bills
that were invoiced prior to September 26, 2013.

Archer argues that it is entitled to judgment in its favor
on Rosefielde's malpractice and breach of fiduciary claims
because the N.J. Supreme Court's decision did not hinge on the
settlement or Rosefielde's classification as an employee or
independent contractor.  Archer further argues that even if
Archer erred in the ways Rosefielde contends, it had no impact
on the N.J. Supreme Court's decision.

Archer also argues that contrary to Rosefielde's
allegations, it pointed out to the court in several of its brief
that the lower courts did not classify Rosefielde as an employee

and that Rosefielde had settled the litigation with Kaye.

Archer further argues that Rosefielde's breach of contract

claims are either a repackaging of his malpractice claims or are

simply affirmative defenses to Archer's claims against him.

## DISCUSSION

### A.    Subject matter jurisdiction

Defendant removed this action from New Jersey state court

to this Court pursuant to 28 U.S.C. § 1441.  This Court has

jurisdiction over this matter pursuant to 28 U.S.C. § 1332

because there is complete diversity of citizenship between the

parties and the amount in controversy exceeds $75,000.  The

citizenship of the parties is as follows:  Plaintiff is a

professional corporation organized under the laws of New Jersey

with its principal place of business in Haddonfield, New Jersey[2];

---

[2] Even though the Third Circuit has not specifically held that a
professional corporation should be treated as a traditional
corporation, see Lincoln Ben. Life Co. v. AEI Life, LLC, 800
F.3d 99, 113 (3d Cir. 2015) (citing Wright, Miller, et al., 13F
Fed. Prac. & Proc. § 3630.1 (3d ed. 2015)) (explaining that
"some circuits treat professional corporations, which function
much like LLCs, as traditional corporations"), several circuits
have come to that conclusion, see Kuntz v. Lamar Corp., 385 F.3d
1177, 1182–83 (9th Cir. 2004) (citation omitted) (holding that a
professional corporation should be treated like a regular
corporation for citizenship purposes, explaining that the
Seventh and Second Circuits have similarly held, and quoting
Judge Posner, paraphrasing Gertrude Stein, "for purposes of
diversity jurisdiction, a corporation is a corporation is a
corporation").  Because New Jersey appears to treat a
professional corporation the same as a traditional corporation,
this Court finds that the citizenship of a New Jersey
professional corporation is the same as a traditional

Defendant is a citizen of Florida.[3]

**B. Standard for Judgment on the Pleadings**

A Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed. Fed. R. Civ. P. 12(c); Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991). In analyzing a Rule 12(c) motion, a court applies the same legal standards as applicable to a motion filed pursuant to Rule 12(b)(6). Turbe, 938 F.2d at 428. Thus, a court must accept

---

corporation under 28 U.S.C. § 1332(c)(1). See N.J.S.A. 14A:17-5(a) ("One or more persons, each of whom is duly licensed or otherwise legally authorized to render the same or closely allied professional service within this State, may organize and become a shareholder or shareholders of a professional corporation for pecuniary profit under the provisions of the Business Corporation Act of New Jersey (Title 14A, Corporations, General, of the New Jersey Statutes), for the sole and specific purpose of rendering such professional service."); N.J.S.A. 14A:17-13(a) ("A professional corporation shall have perpetual existence until dissolved in accordance with the provisions of the Business Corporation Act of New Jersey."); see also http://www.nj.gov/njbusiness/starting/basics/.

[3] The citizenship of third-party defendants – here, Benjamin Morgan and John Connell - is not considered in the Court's subject matter jurisdiction analysis. New Hampshire Ins. Co. v. Diller, 678 F. Supp. 2d 288, 292 n.2 (D.N.J. 2009) (citing Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 169 (3d Cir. 1999) (stating that "a third-party defendant joined under Federal Rule of Civil Procedure 14 does not become a defendant as against the original plaintiff, so that federal jurisdiction is not destroyed where those parties are citizens of the same state") (citing Smith v. Philadelphia Transp. Co., 173 F.2d 721, 724 n.2 (3d Cir. 1949)); In re Albert & Maguire Securities Co., Inc., 70 F.R.D. 361, 363 (E.D. Pa. 1976) ("Under Fed. R. Civ. P. 14, it is not required that diversity of citizenship exist between the third-party defendant and the plaintiff, or that diversity of citizenship exist between defendant, as third-party plaintiff, and the third-party defendant.").

all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"  <u>Bell Atlantic v. Twombly</u>, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)); <u>see also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### C. Analysis

#### 1. *The N.J. Supreme Court's assumption that Rosefielde was an "employee"*

Rosefielde claims that Archer failed to follow his detailed request that Archer argue in the brief and at oral argument that the appellate division had determined that Rosefielde was not an employee but rather an independent contractor, and even that Kaye referred to Rosefielde as an independent contractor. Rosefielde argues that this was crucial because the N.J. Supreme Court's certification of the sole question on appeal erroneously assumed Rosefielde's status as an "employee." Rosefielde also claims that Archer failed to argue in the brief or at oral argument the doctrine of judicial estoppel, where Rosefielde should not be considered an employee for the purposes of engorgement, since he was not considered an employee under NJ CEPA. Rosefielde also claims that Archer failed to file a motion for reconsideration on this issue after the N.J. Supreme Court issued its decision.

In setting forth the relevant background facts, the N.J. Supreme Court noted:

> The salary was characterized as a "retainer" on monthly invoices submitted by Rosefielde. The parties agreed that Rosefielde would work autonomously and that he would not be required to report to a superior. Although the terms of the business arrangement suggest an intent that Rosefielde function as an independent contractor, and the record suggests that it was anticipated early in the relationship that Rosefielde would serve in that capacity, the parties

agree that he was an employee of the entities for which he
served as COO and provided legal services.  We thus address
the issue before us on the assumption that Rosefielde was
an employee.

Kaye III, 121 A.3d at 865 n.2.

Rosefielde argues that this incorrect assumption, left

unchallenged and uncorrected by Archer, resulted in the improper

disgorgement of his wages, and constitutes legal malpractice,

breach of fiduciary duty, and breach of contract.

The elements of a legal malpractice claim "'are (1) the

existence of an attorney-client relationship creating a duty of

care by the defendant attorney, (2) the breach of that duty by

the defendant, and (3) proximate causation of the damages

claimed by the plaintiff.'"  Granata v. Broderick, 143 A.3d 309,

321 (N.J. Super Ct. App. Div. 2016) (quoting McGrogan v. Till,

167 N.J. 414, 425, 771 A.2d 1187 (2001)).  In order to state a

claim for breach of fiduciary duty, a plaintiff must allege: (1)

the existence of a fiduciary relationship, (2) a breach of the

duty imposed by that relationship, and (3) harm to the

plaintiff.  McMullen v. Ocwen Loan Servicing, LLC, 2017 WL

714347, at *4 (D.N.J. 2017) (citing F.G. v. MacDonell, 150 N.J.

550, 561–64, 696 A.2d 697 (1997)) (other citation omitted).  "To

prevail on a breach of contract claim under New Jersey law, a

plaintiff must establish three elements: (1) the existence of a

valid contract between the parties; (2) failure of the defendant

to perform its obligations under the contract; and (3) a causal
relationship between the breach and the plaintiff's alleged
damages."  Id. (citations omitted).

Archer is entitled to judgment in its favor on all three
legal theories for Rosefielde's claims regarding his
classification by the N.J. Supreme Court as an "employee."
First, contrary to Rosefielde's claims, Archer filed an
opposition and cross-motion relating to Kaye's motion to expand
the certified question to the N.J. Supreme Court, and in that
filing, Archer succinctly notes:  "The assertion that Rosefielde
was an employee contradicts the trial court's finding that
Rosefielde did not qualify for employee status as affirmed by
the appellate panel." (Docket No. 23-1 at 9.)  This alone
defeats all of Rosefielde's claims on this issue.

Second, this Court agrees with Archer that the N.J. Supreme
Court's decision does not hinge on Rosefielde's status as an
employee, independent contractor, or any other descriptive name
for his role in Kaye's entities.  Under the long-established
premise that the "disgorgement remedy is consonant with the
purpose of a breach of the duty of loyalty claim," the N.J.
Supreme Court considered whether that remedy is available when a
plaintiff cannot show economic loss.  Kaye III, 121 A.3d at 873.
In holding that it is, the court adopted "the view of
disgorgement as a remedy for the breach of an employee's duty of

loyalty stated by comment a to section 469 of the Restatement
(Second) and comment d(2) to section 8.01 of the Restatement
(Third)." Id. at 873-74.  Comment a provides that "a disloyal
agent is not entitled to compensation, even though the conduct
of the agent does not harm the principal." Id. at 872
(citations omitted).  Comment d(2) provides that "[t]he better
rule does not condition the availability of forfeiture as a
remedy on whether a principal can establish damage." Id.
(citations omitted).

By way of an example for its holding, one of the cases
discussed by the N.J. Supreme Court is County of Essex v. First
Union Nat. Bank, 891 A.2d 600 (N.J. 2006).  That case concerned
a county government's claim for the disgorgement of fees earned
by a bank that obtained its position as a bond underwriter
through bribery perpetrated by the bank's senior vice-president.
Id. at 873 (discussing First Union, 891 A.2d at 607).  "There,
although the county acknowledged that it did not suffer damages
on certain bond transactions, the Court explained that 'unjust
enrichment/disgorgement is an equitable claim ... grounded in
the theory that a wrongdoer should not profit from its
wrongdoing regardless of whether the innocent party suffered any
damages.'" Id. (quoting First Union, 891 A.2d at 607) (further
explaining, "It is the evil of the wrongdoer retaining any of
the fruits of its wrongful conduct that grounds the claim.").

12

When specifically applying the principles of duty of
loyalty and disgorgement to Rosefielde, the N.J. Supreme Court
found that "the trial court's thorough factual findings provide
substantial information about the timing of Rosefielde's
disloyal acts and the frequency and amount of his compensation.
Rosefielde, through his company Plumrose, was paid his $500,000
annual salary on a monthly basis, in equal shares by Flagship
and Atlantic Palace." Kaye III, 121 A.3d at 874. In directing
the trial court, on remand, that it should apportion
Rosefielde's compensation and order disgorgement only for
monthly pay periods in which he committed acts of disloyalty,
the court quoted Simulation Systems Technologies, Inc. v.
Oldham, 634 A.2d 1034, 1036 (N.J. Super. Ct. App. Div. 1993),
which in turn quoted Restatement (Second) § 456 comment b: "A
serious violation of a duty of loyalty or seriously disobedient
conduct is a wilful and deliberate breach of the contract of
service by the agent, and, in accordance with the rule stated in
Section 456, the agent thereby loses his right to obtain
compensation for prior services, compensation for which has not
been apportioned." Id. 874-75.

     Thus, even though the N.J. Supreme Court referred to Kaye
as an "employer" and Rosefielde as an "employee," a claim based
on a breach of the duty of loyalty arises from the concept of
agent and principal, as provided by the Restatement, and

warrants the equitable remedy of disgorgement even when the
principal as not suffered economic loss.  It is indisputable
that Rosefielde acted as Kaye's agent in some form, whatever
that form may be called.  Contrary to Rosefielde's arguments
here, the N.J. Supreme Court's decision in Kaye III depended on
Rosefielde's status as Kaye's agent, rather than Rosefielde's
classification as an "employee."

Finally, Rosefielde's argument about Archer's failure to
raise the principle of judicial estoppel to support his
malpractice, breach of fiduciary duty, and breach of contract
claims is without merit.  As a primary matter, in support of
Rosefielde's claim under New Jersey's Contentious Employee
Protection Act, Rosefielde asserted that "despite his status as
COO and general counsel, he functioned as Kaye's employee."
Kaye II, 75 A.3d at 1193.  The appellate division noted that NJ
CEPA "defines 'employee' as 'any individual who performs
services for and under the control and direction of an employer
for wages or other remuneration,'" id. at 1193 n.17 (quoting
N.J.S.A. 34:19-2(b)), and affirmed the trial court's
determination that Rosefielde did not qualify for employee
status under NJ CEPA, id. at 1213.

That the lower courts did not find Rosefielde to be an
"employee" as defined by NJ CEPA has no import, however, on how
Rosefielde is classified in the breach of the duty of loyalty

14

context.  How a person's status is defined by a statute does not
assume the same status under a different statute or common law.
See, e.g., Nu-Look Design, Inc. v. C.I.R., 356 F.3d 290, 293 (3d
Cir. 2004) (finding that a corporate officer was an employee for
purposes of FICA and FUTA, and therefore required to pay certain
taxes, and rejecting the corporate officer's argument that he
would not be considered an employee under the common law and
therefore not required to pay those taxes); LM Insurance
Corporation v. Kobys, 2017 WL 1073352, at *13 (D.N.J. 2017)
(explaining that the definition of employee is different under
the Federal Motor Carrier Safety Administration regulations, New
Jersey Unemployment Compensation law, New Jersey Worker's
Compensation law, and the common law); see also In re M.L., 2012
WL 385407, at *4 (N.J. Super. Ct. App. Div. 2012) (citations and
quotations omitted) ("When examining the plain language of the
statute, we assign common law definitions of otherwise undefined
statutory terms.  We will not add an additional qualification
which the Legislature pointedly omitted in drafting its own
enactment, or engage in conjecture or surmise which will
circumvent the plain meaning of the act.  Our duty is to
construe and apply the statute as enacted.").

In sum, Rosefielde's claims relating to the N.J. Supreme
Court's classification of Rosefielde as an "employee" fail for
three reasons:  (1) Archer informed the court that the lower

courts did not find Rosefielde to be an "employee"; (2) the N.J.

Supreme Court's decision in Kaye III did not hinge on

Rosefielde's status as an employee, but rather on his status as

Kaye's agent; and (3) Rosefielde's not being an employee under

NJ CEPA has no bearing on his classification in a claim for the

breach of the duty of loyalty. Consequently, Archer is entitled

to judgment in its favor on Rosefielde's malpractice, breach of

fiduciary duty, and breach of contract claims arising out of

Kaye III.[4]

## 2. *Rosefielde's claim regarding the settlement agreement*

Rosefielde claims that Archer committed legal malpractice

and breached its fiduciary duty and their contract by failing to

follow his detailed request that the brief submitted to the N.J.

Supreme Court explain that Rosefielde had entered into a

settlement agreement regarding his and Kaye's Florida

litigation, and that the appeal was the only outstanding dispute

between him and Kaye.

This claim fails because Archer informed the N.J. Supreme

Court in at least three court filings of the settlement. Archer

---

[4] The foregoing analysis also supports the finding that
Rosefielde's claim that Archer committed malpractice and
breached its fiduciary duty and the parties' contract because it
failed to file a motion for reconsideration of the N.J. Supreme
Court's decision is also without merit. Archer is entitled to
judgment in its favor on this basis as well.

filed a motion to dismiss the certification as barred by a
settlement agreement between the parties, or in the alternative,
stay the matter pending a decision by the Florida courts
regarding the settlement agreement.  (See Docket No. 21 at 20.)
In a subsequent brief filed in opposition to Kaye's petition
brief, which changed the noticed grounds for certification,
Archer again argued that Kaye's petition should be dismissed
because of the settlement agreement.  (See id.)  In another
brief filed in opposition to Kaye's motion to expand the
certification, Archer yet again informed the court of the
parties' settlement agreement.  (Docket No. 23-1 at 9.)  That
the N.J. Supreme Court did not find the settlement issue to be
dispositive to Kaye's appeal or to the disgorgement issue does
not impose liability onto Archer for malpractice or breach of
fiduciary duty or contract.  Archer's motion for judgment in its
favor on this basis must be granted.

### 3. *Rosefielde's claims regarding Archer's alleged excessive and unnecessary billing*

Rosefielde claims that Archer engaged in unnecessary and
excessive billing.  Rosefielde also claims that Archer breached
the parties' September 26, 2013 agreement that settled all
outstanding legal bills when it filed the instant suit against
Rosefielde to collect on five bills that were invoiced prior to
September 26, 2013.  Archer argues that all of Rosefielde's

counterclaims regarding Archer's legal fees are affirmative
defenses to its claims against Rosefielde to collect on those
bills rather than actionable counterclaims.

The Court agrees that Rosefielde's allegations regarding
Archer's legal bills are similar to Rosefielde's defenses to
Archer's claims against him.  See Modern Creative Services, Inc.
v. Dell Inc., 2008 WL 305747, at *2 (D.N.J. 2008) (quoting
Black's Law Dictionary 451 (8th ed. 2004)) ("An affirmative
defense generally constitutes a 'defendant's assertion of facts
and arguments that, if true, will defeat the plaintiff's or
prosecution's claim, even if all the allegations in the
complaint are true.'").  Indeed, Rosefielde's affirmative
defenses encompass all of his allegations in his counterclaims:
waiver, laches, estoppel, unclean hands, accord and
satisfaction, and unjust enrichment.  (See Docket No. 7 at 4.)

This does not mean, however, that Rosefielde cannot assert
counterclaims on the same bases as his affirmative defenses.
For example, Rosefielde claims that Archer breached the parties'
September 26, 2013 settlement agreement by seeking payment for
invoices #1403020 dated 11/16/11, #1408540 dated 12/12/11,
#1436955 dated 05/09/12, #1455322 dated 08/08/12, and #1212890
dated 08/07/08, which were all invoiced prior to September 26,
2013, and thus have been fully satisfied.  (Docket No. 7 at 21.)
Even though Rosefielde's affirmative defense of accord and

satisfaction may be a defense to liability on Archer's claims against Rosefielde for payment of those five bills, such defense does not prevent Rosefielde from asserting his own breach of contract claim against Archer for Archer's liability for breaching the parties' contract.  See Fed. R. Civ. P. 13(a) ("A pleading must state as a counterclaim any claim that – at the time of its service - the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."); Master Cutlery, Inc. v. Panther Trading Co., Inc., 2013 WL 4517860, at *3 (D.N.J. 2013) (denying the plaintiff's motion to dismiss the defendant's counterclaims on the basis that the counterclaims were really affirmative defenses, and noting that the plaintiff did not "cite any legal authority suggesting that an affirmative defense cannot be premised on the same legal theory as a counterclaim, and this Court is aware of none").

This also holds true for Rosefielde's claims for malpractice and breach of fiduciary duty relating to Archer's alleged improper billing.  In general, counterclaims against law firms seeking to collect on outstanding bills are not dismissible merely because they are duplicative of the clients' affirmative defenses.  See e.g., Hill Wallack v. Saint Gerard

<u>Jordan</u>, 2011 WL 2636986, at *1 (N.J. Super. Ct. App. Div. 2011)
("Plaintiff Hill Wallack, LLP, sued defendant, Jackie Saint
Gerard Jordan, seeking unpaid legal fees in excess of $88,000
associated with its representation of defendant in a divorce
action. Defendant filed a separate complaint against plaintiff,
alleging legal malpractice on grounds that plaintiff
unnecessarily prolonged the litigation, resulting in excessive
billing. Thereafter, the cases were consolidated upon
consent."); <u>Szaferman, Lakind, Blumstein, Blader & Lehmann, P.C.</u>
<u>v. Parise</u>, 2010 WL 624084, at *1 (N.J. Super. Ct. App. Div.
2010) (plaintiff law firm sued its clients for outstanding legal
fees, and clients counterclaimed alleging legal malpractice and
fraud); <u>Safier v. Walder, Sondak & Brogan, P.C.</u>, 2007 WL
1790707, at *1 (N.J. Super. Ct. App. Div. 2007) (plaintiff law
firm sued its client for legal fees, and client counterclaimed
for billing fraud, unjust enrichment, and breach of contract)).

Because Archer has not argued that Rosefielde's claims
based on his allegations of Archer's improper billing are
deficient on any other basis than being duplicative of his
affirmative defenses, those claims survive Archer's instant
motion.

### CONCLUSION

Archer is entitled to judgment in its favor on Rosefielde's
counterclaims/third-party claims arising out of the N.J. Supreme

Court's decision in <u>Kaye III</u>.  Archer is not entitled to
judgment on Rosefielde's counterclaims/third-party claims
relating to Archer's legal fees.  An appropriate Order will be
entered.


Date: June 12, 2017                    s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.